IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
Record No. 23-4527(L)
_____

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

DAVID MILAM,
Defendant-Appellant.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT WILMINGTON
_____

APPELLANT'S REDACTED OPENING BRIEF
_____

Kelly Margolis Dagger
Paul K. Sun, Jr.
ELLIS & WINTERS LLP
Post Office Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000

*Counsel for Appellant David Milam*

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................i

TABLE OF AUTHORITIES ........................................................iv

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION.......................................................................1

STATEMENT OF THE ISSUES...............................................3

    I.    WHETHER THE DISTRICT COURT ERRED BY DENYING
        MR. MILAM'S MOTION TO WITHDRAW HIS GUILTY PLEAS.

    II.   WHETHER THE DISTRICT COURT COMMITTED
        PROCEDURAL ERROR AT SENTENCING BY DECLINING TO
        APPLY A REDUCTION IN THE OFFENSE LEVEL FOR
        MR. MILAM'S ACCEPTANCE OF RESPONSIBILITY.

    III.  WHETHER THE DISTRICT COURT IMPOSED A
        SUBSTANTIVELY UNREASONABLE SENTENCE.

STATEMENT OF THE CASE....................................................4

SUMMARY OF ARGUMENT ...............................................27

ARGUMENT ..........................................................................28

    I.    THE DISTRICT COURT ERRED BY DENYING MR. MILAM'S
        MOTION TO WITHDRAW HIS GUILTY PLEAS. ........................28

    *Standard of Review* ....................................................28

    *Discussion* .................................................................29

        A.   The Appeal Waiver in Mr. Milam's Plea Agreement in the
            Drug Case Does Not Bar His Appeal of the District Court's
            Denial of the Motion to Withdraw His Guilty Pleas ................30

B.     The District Court Abused Its Discretion by Denying Mr. Milam's Motion to Withdraw His Guilty Pleas ................31

       1.     Mr. Milam credibly asserted that his plea was not knowingly and voluntary .................................................32

       2.     Mr. Milam did not have the close assistance of competent counsel at the time of his please ...................37

       3.     The other relevant *Moore* factors did not warrant denying Mr. Milam's motion to withdraw his pleas ......39

II.     THE DISTRICT COMMITTED PROCEDURAL ERROR AT SENTENCING BY DECLINING TO APPLY REDUCTION IN THE OFFENSE LEVEL FOR MR. MILAM'S ACCEPTANCE OF RESPONSIBILITY .......................................................................42

*Standard of Review* ...........................................................................42

*Discussion* ........................................................................................43

A.     The District Court Erred by Considering the Government's Argument That Mr. Milam Should Not Receive a Reduction for Acceptance of Responsibility Because the Government Did Not Object to That Reduction in the Presentence Investigation Report ..........................................................................................45

B.     ████████████████████████████████████████ ████████████████████████████ .........................47

C.     In the Alternative, the District Court Failed to Recognize That It Had Discretion to Award a Reduction for Acceptance of Responsibility in These Circumstances ....................................49

D.     The District Court's Errors Denied Mr. Milam the Opportunity to Establish a Lower Guidelines Range, and Thus Warrant Reversal .................................................................................50

ii

III.   THE DISTRICT COURT'S 300-MONTH TOTAL SENTENCE IS SUBSTANTIVELY UNREASONABLE ......................................51

*Standard of Review* ........................................................51

*Discussion* .................................................................51

CONCLUSION ...................................................................56

CERTIFICATE OF COMPLIANCE ....................................................58

CERTIFICATE OF SERVICE .......................................................59

iii

## TABLE OF AUTHORITIES

CASES                                                                Page(s)

*Brady v. Maryland*, 373 U.S. 83 (1963) ...................................7, 13, 15, 30

*Brady v. United States*, 397 U.S. 742 (1970)............................................33

*Franks v. Delaware*, 438 U.S. 154 (1978)................................................36

*Gall v. United States*, 552 U.S. 38 (2007) ..........................................43, 51

*Hill v. Lockhart*, 474 U.S. 52 (1985) .......................................................39

*Jones v. Murray*, 947 F.2d 1106 (4th Cir. 1991) .....................................37

*Molina-Martinez v. United States*, 578 U.S. 189 (2016).........................50

*Strickland v. Washington*, 466 U.S. 668 (1984) ................................39, 37

*United States v. Attar*, 38 F.3d 727 (4th Cir. 1994).................................30

*United States v. Artabane*, 868 F. Supp. 76 (M.D. Pa. 1994)................41

*United States v. Baker*, 445 F.3d 987 (7th Cir. 2006) ............................54

*United States v. Bowman*, 348 F.3d 408 (4th Cir. 2003).................29, 31

*United States v. Brown*, 828 F.3d 375 (6th Cir. 2016) ...........................33

*United States v. Byrd*, 208 F. App'x 206 (4th Cir. 2006).................43, 46

*United States v. Craig*, 985 F.2d 175 (4th Cir. 1993).......................29, 31

*United States v. Cruz-Polanco*, 797 F. App'x 92 (4th Cir. 2019) ..........47

*United States v. Dix*, 64 F.4th 230 (4th Cir. 2023)..................................45

*United States v. Dugger*, 485 F.3d 236 (4th Cir. 2007)....................43, 47

*United States v. Fisher*, 711 F.3d 460 (4th Cir. 2013)................................................15

*United States v. Grossman*, 400 F.3d 212 (4th Cir. 2005).......................................35

*United States v. Hankins*, No. 2:09-cr-00222, 2010 WL 4642004
    (S.D. W. Va. Nov. 8, 2010) ..........................................................................40, 41

*United States v. Hargrove*, 478 F.3d 195 (4th Cir. 2007) .......................................49

*United States v. Howard*, 773 F3d 519 (4th Cir. 2014)...........................................52

*United States v. Kise*, 369 F.3d 766 (4th Cir. 2004)................................................44

*United States v. Kramer*, No. 21-4424,
    2022 WL 2987964 (4th Cir. July 28, 2022) .................................................32

*United States v. Johnson*, 410 F.3d 137 (4th Cir. 2005)..........................................31

*United States v. Lalor*, 996 F.2d 1578 (4th Cir. 1993) .....................................8, 9, 33

*United States v. Leon*, 468 U.S. 897 (1984) .............................................................9

*United States v. Lough*, 203 F. Supp. 3d 747 (N.D. W. Va. 2016) .........................39

*United States v. Louthian*, 756 F.3d 295 (4th Cir. 2014).........................................51

*United States v. Martinez-Martinez*, 578 F. App'x 189 (2016)...............................50

*United States v. Miller*, 77 F.3d 71 (4th Cir. 1996).................................................48

*United States v. Montes-Pineda*, 445 F.3d 375 (4th Cir. 2006) .......................51, 56

*United States v. Moore*, 931 F.2d 245 (4th Cir. 1991) .............................. *in passim*

*United States v. Moussaoui*, 591 F.3d 263 (4th Cir. 2010) .............................32, 38

*United States v. Olano*, 507 U.S. 725 (1993) ....................................................43, 50

*United States v. Parsons*, 57 F. App'x 565 (4th Cir. 2003)....................................47

*United States v. Restrepo*, 936 F.2d 661 (2d Cir. 1991) ..........................................49

*United States v. Roman*, 942 F.3d 43 (1st Cir. 2019) ..............................................36

*United States v. Shortt*, 485 F.3d 243 (4th Cir. 2007) ............................................52

*United States v. Sparks*, 67 F.3d 1145 (4th Cir. 1995) ...............................32, 40, 41

*United States v. Sueiro*, 59 F.4th 132 (4th Cir. 2023) ............................................51

*United States v. Thompson-Riviere*, 561 F.3d 345 (4th Cir. 2009) ..................29, 32

*United States v. Tran*, 623 F. App'x 52 (4th Cir. 2015) ..........................................30

*United States v. U.S. Gypsum Co.*, 333 U.S. 364 (1948)..........................................43

*United States v. Ventura*, 864 F.3d 301 (4thCir. 2017 ............................................42

*United States v. Winbush*, 922 F.3d 227 (4th Cir. 2019) .........................................46

*United States v. Yansane*, 370 F. Supp. 3d 580 (D. Md. 2019)...............................40

STATUTES, RULES, AND GUIDELINES                                                    Page(s)

18 U.S.C. § 111 ...............................................................................................1, 6, 19

18 U.S.C. § 922 ....................................................................................................1, 5

18 U.S.C. § 924 ..............................................................................................1, 5, 11

18 U.S.C. § 3231 ......................................................................................................1

18 U.S.C. § 3553 .................................................................................... *in passim*

18 U.S.C. § 3583 ...................................................................................................55

21 U.S.C. § 841 ...................................................................................................1, 6

21 U.S.C. § 846 ...................................................................................................1, 6

28 U.S.C. § 1291 ......................................................................................3

Fed. R. Crim. P. 11..............................................................................29

Fed. R. Crim. P. 16................................................................................7

Fed. R. Crim. P. 32..............................................................................45

U.S.S.G. § 3E1.1 ............................................................ *in passim*

████████████████████████████████████████████████

U.S.S.G. ch. 5, Sentencing Table............................................50

<u>OTHER AUTHORITIES</u>                                          <u>Page(s)</u>

*Criminal Justice Standards for the Defense Function* (Am.
     Bar Ass'n 4th ed. 2017)....................................................37, 38, 39

H.R. Rep. No. 103-320, 1993 WL 537335 .........................................56

U.S. Sent'g Comm'n, *2022 Annual Report and Sourcebook of Federal
     Sentencing Statistics* (Table 15).............................................. 53-54

U.S. Sent'g Comm'n, *Recidivism of Federal Offenders Released in 2010*
     (Sept. 2021)...........................................................................................55

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

David Craig Milam was charged in three cases in the district court. JA1-10, JA11-19, JA20-25. In 7:19-cr-102 ("the firearm case"), he was charged by indictment with possession of a firearm having previously been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924. JA26. In 7:19-cr-176 ("the drug case"), Mr. Milam was charged by criminal information with conspiracy to distribute and possess with intent to distribute controlled substances, including 500 grams or more of a mixture and substance containing methamphetamine, and 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession with intent to distribute a quantity of methamphetamine and a quantity of heroin, in violation of § 841(a)(1). JA54-55. In 4:22-cr-25 ("the assault case"), Mr. Milam was charged by indictment with forcibly assaulting a federal officer in the performance of the officer's duties, causing bodily injury, in violation of 18 U.S.C. § 111(b). JA92.

In all three cases, the district court, sitting in the Eastern District of North Carolina, had subject matter jurisdiction under 18 U.S.C. § 3231.

On August 13, 2019, Mr. Milam pleaded guilty without a plea agreement to the indictment in the firearm case. JA3, JA40-53. On January 15, 2020, Mr. Milam pleaded guilty pursuant to a plea agreement to the information in the drug case. JA12, JA68-91; *see* JA325-331. On October 20, 2022, Mr. Milam

moved to withdraw his guilty pleas in the firearm case and the drug case.  JA6,

JA15, JA95-110.  After holding an evidentiary hearing, JA8, JA16, JA346-414, the

United States Magistrate Judge issued a memorandum and recommendation that

the motion to withdraw be denied, JA8, JA17, JA150-163, to which Mr. Milam

objected, JA8, JA17, JA164-176.  On May 16, 2023, the district court adopted the

memorandum and recommendation and denied Mr. Milam's motion, thus allowing

Mr. Milam's guilty pleas in the firearm case and the drug case to stand.  JA8,

JA17, JA179-186.  In the assault case, Mr. Milam pleaded guilty to the indictment

without a plea agreement on June 7, 2023.  JA22-23, JA196-208.

The district court held a sentencing hearing for all three cases on July 11,

2023, and July 26, 2023.  JA9, JA18, JA23.  In the firearm case, the court

sentenced Mr. Milam to a 120-month term of imprisonment and a three-year term

of supervised release.  JA282-283, JA265-266.  In the drug case, on the conspiracy

charge, the court sentenced Mr. Milam to a 300-month term of imprisonment and a

five-year term of supervised release; on the possession with intent to distribute

charge, the court sentenced Mr. Milam to a 240-month term of imprisonment and a

three-year term of supervised release.  JA282-283, JA265-266.  In the assault case,

the court sentenced Mr. Milam to a 240-month term of imprisonment and a three-

year term of supervised release.  JA282-283, JA266.  The court ordered all

sentences to run concurrently, producing a 300-month total term of imprisonment, and a five-year total term of supervised release.  JA282-283.

The district court entered judgment on July 31, 2023.  JA9, JA18, JA23; *see* JA280-287.

Mr. Milam timely filed notices of appeal on August 14, 2023.  JA9, JA18, JA23; *see* JA288.  This Court consolidated all three cases for appeal.  Order, *United States v. Milam*, No. 23-4527(L) (4th Cir. Aug. 16, 2023) (Dkt. No. 4). This Court has jurisdiction of this appeal from the final judgment[1] entered against Mr. Milam under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.    WHETHER THE DISTRICT COURT ERRED BY DENYING MR. MILAM'S MOTION TO WITHDRAW HIS GUILTY PLEAS.

II.   WHETHER THE DISTRICT COURT COMMITTED PROCEDURAL ERROR AT SENTENCING BY DECLINING TO APPLY A REDUCTION IN THE OFFENSE LEVEL FOR MR. MILAM'S ACCEPTANCE OF RESPONSIBILITY.

III.  WHETHER THE DISTRICT COURT IMPOSED A SUBSTANTIVELY UNREASONABLE SENTENCE.

---

[1] In each case below, the district court entered an identical judgment.  JA9, JA18, JA23, JA280-287.  Mr. Milam thus refers to his "appeal" from the "final judgment" in the singular.

3

## STATEMENT OF THE CASE

*Investigation and arrests on firearm and drug charges*

On March 13, 2019, the Onslow County Sheriff's Office in Jacksonville, North Carolina, conducted surveillance of a home in Sneads Ferry, North Carolina, where they believed that David Milam and Carolee Simpson lived. JA442. Officers had learned during their investigation that the home was a meeting place for the Aryan Kings street gang. JA442.

When they approached the house, officers met Mr. Milam, Ms. Simpson, and Brian Pearce. JA442. Officers detained and search all three individuals, finding no contraband. JA442. Inside the house, officers found items related to the Aryan Kings, including swastikas, the Aryan creed, and gas masks, and, in the master bedroom, a loaded .40 caliber pistol. JA442. Officers charged Mr. Milam, who had a prior felony conviction, with possessing the firearm. JA442. Mr. Milam was arrested and released. *See* JA442.

Mr. Pearce later admitted that he had flushed three ounces of crystal methamphetamine down a toilet before officers entered Mr. Milam's house on March 13, 2019. JA442. On May 22, 2019, officers returned to the home. JA48, JA442. Officers saw Mr. Milam leave the home in a car and then stopped him when he committed a traffic violation. JA48-49, JA442. Mr. Milam was driving the car with Robert Harmer in the front passenger seat. JA442. Mr. Harmer

4

revealed that he had a "speaker box" in his pants pocket, prompting officers to search Mr. Harmer and find a box containing a spoon and a syringe loaded with heroin. JA443. Upon a search of the car, officers found $14,612 in cash, two grams of marijuana, and packaging materials. JA49, JA443; *see* JA172-173.

Officers obtained a warrant for Mr. Milam's house. JA49, JA443; *see* JA126-138. Inside the house, officers found two pistols, a .22 caliber handgun, two assault-style rifles, ammunition, high-capacity magazines, 31.9 grams of methamphetamine, and 27.5 grams of heroin. JA49, JA139-140. Mr. Milam admitted to being involved in methamphetamine and heroin trafficking. JA443.

*2019 charges and guilty pleas*

On May 23, 2019, Mr. Milam was charged by criminal complaint in the firearm case. JA2. A grand jury then indicted Mr. Milam, on June 12, 2019, on one count of possession of a firearm having previously been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924. JA3, JA26. On August 13, 2019, Mr. Milam pleaded guilty to the indictment without a plea agreement. JA3, JA47.

On November 18, 2019, Mr. Milam was charged by criminal information in the drug case. JA12. The government alleged that Mr. Milam engaged in a conspiracy to distribute and possess with intent to distribute controlled substances, including 500 grams or more of a mixture and substance containing methamphetamine, and 100 grams or more of heroin, in violation of 21 U.S.C.

5

§§ 841(a)(1) and 846, and that he possessed with intent to distribute a quantity of

methamphetamine and a quantity of heroin, in violation of § 841(a)(1). JA54-55.

Mr. Milam pleaded guilty to both charges pursuant to a plea agreement on January

15, 2020. JA12, JA86, JA325-331. ███████████████████████

████████████████ █████████████████████████

███████████████████████████████████████

███████████████

*Pamlico County Jail incident and 2021 indictment*

While awaiting sentencing on the firearm and drug charges, Mr. Milam was

detained at the Pamlico County Jail in Bayboro, North Carolina. JA443. On July

23, 2021, Mr. Milam refused orders to pack his belongings and move to another

cell. JA443. Mr. Milam then got into a fistfight with correctional officers. JA443-

444. Mr. Milam and one of the officers were injured in the fight. JA444.

Based on this fight, on April 26, 2022, Mr. Milam was indicted in the assault

case on a single charge of forcibly assaulting a federal officer in the performance

of the officer's duties, causing bodily injury, in violation of 18 U.S.C. § 111(b).

JA21, JA92.

---

[2] ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████

*Motion to withdraw guilty pleas in firearm and drug cases*

On October 20, 2022, Mr. Milam moved to withdraw his guilty pleas in both the firearm and drug cases. JA6, JA15, JA95-110.[3] Mr. Milam argued that the government had violated his rights under the Fifth Amendment as interpreted in *Brady v. Maryland*, 373 U.S. 83 (1963), and under Rule 16 of the Federal Rules of Criminal Procedure, by failing to disclose a complete copy of the search warrant and supporting affidavit that enabled officers to search his home on May 22, 2019, where the officers uncovered drugs, firearms, and other incriminating evidence. JA95, JA97-98; *see* JA139-140. Mr. Milam further argued that his prior counsel had rendered ineffective assistance by failing to identify and correct the government's discovery violation. JA95.

Mr. Milam argued that the complete copy of the search warrant affidavit— which he only got when his new counsel requested it in 2022, JA98, JA124— revealed deficiencies in the officers' showing of probable cause that he did not have the opportunity to consider before entering his pleas in the firearm and drug cases. *See* JA98-101, JA103-105.

Mr. Milam argued that at least two of the factors recognized in *United States v. Moore*, 931 F.2d 245 (4th Cir. 1991), weighed in favor of allowing him to

---

[3] Mr. Milam filed identical motions to withdraw in the firearm and drug cases. *See* JA150 (noting that motions to withdraw were identical), JA180 (same). The parties have included only a single copy of the motion, related filings, hearing transcripts, and orders in the joint appendix.

withdraw his pleas. JA103. First, Mr. Milam argued that the government's failure to timely produce the search warrant affidavit prevented him from considering a suppression motion and, therefore, his guilty pleas were not knowing and voluntary. JA103-105. Second, Mr. Milam argued that he did not have the close assistance of competent counsel when he entered the pleas, because his counsel failed to identify and address the discovery violation. JA105-107. If he had had the opportunity to consider a motion to suppress, Mr. Milam argued, the outcome would likely have been different. *See* JA108. Mr. Milam asserted that he had a meritorious challenge to the search warrant under *United States v. Lalor*, 996 F.2d 1578 (4th Cir. 1993), because there was nothing in the supporting affidavit linking the location to be searched to the suspected criminal activity. JA108-109.

In response, the government argued that Mr. Milam did not offer credible evidence that his guilty pleas were not knowing or voluntary. JA334. The government admitted that it did not provide all the pages of the search warrant application because of what it said was a scanning error. JA334-335. The government argued that, as to the drug case, Mr. Milam did not have the same discovery rights as in the firearm case, because Mr. Milam was never indicted in the drug case, and instead pleaded guilty to a criminal information. JA335-336.

According to the government, the missing pages of the search warrant application were not material. JA336. The government argued that the complete

search warrant affidavit supported the probable cause finding, and that Mr. Milam

could not show that having the complete affidavit would have caused him to file a

suppression motion or go to trial.  JA336.  The government asserted that the search

warrant affidavit was sufficient under *Lalor*, and that even if the warrant was

defective, suppression would be inappropriate under the good faith exception

recognized in *United States v. Leon*, 468 U.S. 897 (1984).  JA337.  The

government also noted that it had incriminating evidence against Mr. Milam other

than the evidence obtained pursuant to the search warrant.  JA337.

The government argued that other factors weighed against Mr. Milam's

motion, including that Mr. Milam had not asserted legal innocence, that he waited

more than two years after pleading guilty to attempt to withdraw his pleas, that he

had the close assistance of competent counsel, and that withdrawal of the pleas

would prejudice the government and waste judicial time and resources.  JA338-

343.  Among other things, the government argued that █████████████████

████████████████████████████████████████████████████████

███████████  JA335, JA341-342.  The government further argued that

Mr. Milam sought to withdraw his pleas in the firearm and drug cases only after

being indicted in the assault case and suggested that the motion to withdraw was a

"tactical decision based on the sentence he is now facing."  JA342.  The

government surmised that ██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ JA342.

*Hearing on motion to withdraw guilty pleas*

The United States Magistrate Judge held an evidentiary hearing on the

motion to withdraw on February 8, 2023.  JA8, JA16; *see* JA346-414.

Mr. Milam's defense counsel at the time of his guilty pleas, Assistant

Federal Public Defender Rosemary Godwin, testified for the government.  *See*

JA349.  Ms. Godwin discussed her representation of Mr. Milam in the drug and

firearm cases, ████████████████████████████████████████

████████████████████████████████ JA352; *see* JA349-354.  Ms. Godwin

testified that ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████ JA354-355.  According to Ms. Godwin, ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████ *See* JA356 ("I told him ██████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

10

Ms. Godwin recounted negotiating a plea agreement for Mr. Milam to avoid

indictment in the drug case.  JA357-362.  She explained that she obtained a plea

offer where Mr. Milam would have a stipulated drug weight to limit his sentencing

exposure, he would avoid a charge under 18 U.S.C. § 924(c), and ███████████

████████████████████████████ JA357.

     Ms. Godwin testified that ████████████████████████████████████

████████████████████████ JA363.  She testified about

████████████████████████████████████████████

████████████████████████████ JA363.

Ms. Godwin testified that █████████████████████████████████

████████████████████████████████████████

██████████████████ JA365.

     Ms. Godwin further testified that ██████████████████████████

████████████████████████████████████ JA363.  Then,

Ms. Godwin explained, Mr. Milam's sentencing hearing was delayed by the

COVID-19 pandemic.  JA363-364.

     Ms. Godwin testified that, in the summer of 2021, someone sent what

appeared to be legal mail from Ms. Godwin to the jail where Mr. Milam was

detained.  JA364.  The apparent legal mail was fake—the mail was used to

smuggle drugs into the jail.  JA364.  The government suspected Mr. Milam of

being involved with the fake legal mail.  JA364-365.  As a result, Ms. Godwin

withdrew from representing Mr. Milam.  JA364.

On cross-examination, Ms. Godwin testified that she could not recall

whether she reviewed the search warrant with Mr. Milam.  JA371.  Ms. Godwin

further testified about her consultations with Mr. Milam and his decision to plead

guilty in the firearm and drug cases.  JA371-380.

Mr. Milam did not put on evidence.  *See* JA393.  Mr. Milam's counsel

argued that Mr. Milam had not entered knowing and voluntary pleas because of the

government's failure to produce the complete search warrant affidavit.  JA396.

Mr. Milam's counsel explained that the court did not need to consider whether the

search warrant was supported by probable cause, either with or without the

complete affidavit; rather, the question for the court was whether the unproduced

evidence was material to Mr. Milam's decision to plead guilty.  JA398-399.

Mr. Milam's counsel argued that it was not possible to "advise a client about the

viability of a pretrial motion to suppress without having the benefit of having

reviewed that full, correct copy of the warrant yourself."  JA399-400.

The government's counsel argued that the *Moore* factors weighed against

allowing Mr. Milam to withdraw his pleas.  JA408.  According to the

government's counsel, Mr. Milam made a knowing and voluntary decision after

weighing his options; he delayed substantially in seeking to withdraw his pleas;

12

and the government would be prejudiced by withdrawal because witnesses'
memories might be affected by the passage of time.  JA408-409.

*Denial of motion to withdraw guilty pleas*

After the hearing, the United States Magistrate Judge issued a memorandum
and recommendation that the motion to withdraw guilty pleas be denied.  JA150-
163.  The magistrate judge found that Ms. Godwin's testimony was not necessary
to the disposition of the motion, so it did not discuss her testimony.  JA151.

The magistrate judge found that the first *Moore* factor, whether the
defendant had offered credible evidence that his pleas were not knowing and
voluntary, weighed against Mr. Milam.  JA153-159.  The magistrate judge noted
that there was a circuit split as to whether *Brady* requires disclosure of exculpatory
information in the guilty plea context.  JA153-154.  Assuming, without deciding,
that *Brady* applied, the magistrate judge found that there was no *Brady* violation
because the undisclosed evidence was not material.  JA154.  The magistrate judge
found that the undisclosed pages of the search warrant application strengthened the
probable cause showing, and those pages were "decidedly not material because
there is no reasonable probability that Defendant would have proceeded differently
by not pleading guilty and pursuing a suppression motion had the evidence been
disclosed."  JA156; *see* JA157-159.

Turning to whether Mr. Milam had the close assistance of competent counsel, the magistrate judge also found that this factor weighed against Mr. Milam.  JA159-161.  The magistrate judge found that Mr. Milam failed to demonstrate prejudice from counsel's allegedly deficient performance, where the search warrant was supported by a "strong showing of probable cause."  JA160. The magistrate judge found that Mr. Milam "failed to demonstrate there is a reasonable probability that had counsel obtained the full search warrant and affidavit, Defendant would have pursued a baseless suppression motion and gone to trial rather than pleading guilty."  JA160.  The magistrate judge also noted that Mr. Milam stated in the Rule 11 colloquy that he was satisfied with Ms. Godwin's representation, and that the record demonstrated that Ms. Godwin negotiated favorable plea terms.  JA160-161.

As to the remaining *Moore* factors, the magistrate judge found that they were either neutral or weighed against Mr. Milam.  JA161.  Mr. Milam had not asserted legal innocence; therefore, that factor weighed against him.  JA161. Although Mr. Milam delayed more than three years in the firearm case and almost three years in drug case before moving to withdraw his pleas, the magistrate judge found that this factor was neutral, where the basis for the motion was not discovered until new counsel appeared, and new counsel filed the motion "reasonably promptly."  JA161-162.  The magistrate judge agreed that the

14

government would be prejudiced by withdrawal, and that this factor weighed against Mr. Milam. JA162. As to the final factor, inconvenience and waste of judicial resources, the magistrate judge found that it was "at best neutral." JA162.

Having considered all the *Moore* factors, the magistrate judge recommended that the district court deny the motion to withdraw. JA162.

Mr. Milam objected to the memorandum and recommendation. JA164-176. Mr. Milam argued that the magistrate judge improperly focused on whether the court would have granted or denied a motion to suppress evidence, if Mr. Milam had challenged the sufficiency of the search warrant affidavit. JA164. Mr. Milam continued to assert that he had shown the requisite fair and just reason to withdraw his plea, and that his motion should therefore be granted. JA164-165.

As to the undisclosed pages of the search warrant affidavit, Mr. Milam argued that the lack of disclosure, even if not a *Brady* violation, meant his pleas were not knowing and voluntary. JA165-166. Mr. Milam argued that the undisclosed pages did not have to be material under *Brady* to warrant granting the motion to withdraw. JA166. Rather, citing to *United States v. Fisher*, 711 F.3d 460, 469 (4th Cir. 2013), Mr. Milam argued that, because the lack of complete production rendered Mr. Milam's pleas not "knowing," the court was not required to determine whether there was a *Brady* violation. JA166-167.

15

Mr. Milam also objected to the memorandum and recommendation to the
extent that the magistrate judge found Ms. Godwin's testimony unnecessary to the
disposition of the motion to withdraw.  JA167.  Mr. Milam argued that the
testimony was important, and that it showed that Ms. Godwin had not read the
search warrant, let alone reviewed it with Mr. Milam.  JA168.  Mr. Milam
continued to assert that he had not entered his guilty pleas with the "close
assistance of competent counsel."  JA171.

Although Mr. Milam argued that he did not need to show that a suppression
motion would have been successful, he objected to the magistrate judge's
conclusion that such a motion would have been "baseless," and explained why
there could have been a valid basis to move to suppress.  JA171-176.

On May 16, 2023, the district court overruled Mr. Milam's objections,
adopted the magistrate judge's memorandum and recommendation, and denied
Mr. Milam's motion to withdraw his guilty pleas.  JA179-186.  The district court
ruled that Mr. Milam had to show that the undisclosed evidence was material to his
choice to plead guilty, and that he had failed to make that showing.  JA182.  The
district court rejected the argument that Mr. Milam could not have had the close
assistance of competent counsel when his attorney never read the search warrant.
JA183.  The court ruled that Mr. Milam was required to show that, but for his

counsel's errors, he would not have pleaded guilty, and that he had not made that showing.  JA183.

The district court concluded, in summary, that Mr. Milam failed to show that but for either the discovery violation or the alleged ineffective assistance, he would have insisted on proceeding to trial.  JA185.  Based on the first and fourth *Moore* factors and the totality of the circumstances, the district court determined that withdrawal of the pleas was not warranted.  JA185.

*Arraignment and guilty plea in assault case*

Having lost his motion to withdraw his guilty pleas in the firearm and drug cases, Mr. Milam proceeded to arraignment in the assault case.  JA22; *see* JA187-208.  On June 7, 2023, Mr. Milam pleaded guilty to the indictment in the assault case without a plea agreement.  JA22, JA204.

*Sentencing and judgment*

The Probation Office issued a combined presentence investigation report addressing the firearm, drug, and assault cases.  JA438-464; *see* JA471.  The Probation Office described the offense conduct in each case.  JA442-444.  The Probation Office also described other allegations of criminal conduct not part of the relevant conduct.  *See* JA445-446.  The Probation Office recounted that, in May 2021, a cooperating defendant informed federal agents that Mr. Milam was receiving cigarettes, K2-soaked paper, suboxone strips, and methamphetamine at

17

Pamlico County Jail from another member of the Aryan Kings.  JA445.  According to the cooperating defendant, Mr. Milam instructed a co-conspirator to label packages as legal mail, using the name and address of Mr. Milam's counsel at the time.  JA445.  After agents intercepted a package disguised as legal mail and found it to contain suboxone, Mr. Milam told the co-conspirator to address the next package to another inmate.  JA445-446.  The co-conspirator later sent another package containing controlled substances, but it was returned for inadequate postage.  JA446.  Agents interviewed multiple inmates who claimed that Mr. Milam sold K2, suboxone, and methamphetamine to other inmates at Pamlico County Jail.  JA447.

Mr. Milam's criminal record began at age 17 and continued through his adulthood.  JA448-455.  The Probation Office determined that Mr. Milam had eighteen criminal history points based on his prior sentences, resulting in a criminal history category of VI.  JA455.

As to Mr. Milam's background, the Probation Office reported that Mr. Milam, then thirty-nine years old, was the father of six children, five of them still minors.  JA439, JA456.  He began using marijuana at age twelve and cocaine at age thirteen and reported being addicted to both substances.  JA457.  Although Mr. Milam completed substance abuse treatment in 2004, he returned to using drugs after treatment.  JA457.  Starting at age thirteen, Mr. Milam worked as a

commercial fisherman in Sneads Ferry.  JA458.  He withdrew from high school but later earned a GED.  JA458.

On Mr. Milam's drug and firearm offenses, the Probation Office found that the base offense level was 32; the Probation Office increased that offense level because a firearm was possessed, Mr. Milam used or threatened to use violence, and Mr. Milam maintained a premises for the purposes of distribution of controlled substances.  JA459.  The Probation Office applied a four-point adjustment for Mr. Milam's leadership role in the offense.  JA460.  The Probation Office thus calculated an adjusted offense level of 42.  JA460.

On the assault offense, the Probation Office determined that the base offense level was 14.  JA460.  The Probation Office applied a five-point enhancement because a victim sustained serious bodily injury, and a two-point enhancement because Mr. Milam was convicted under 18 U.S.C. § 111(b).  JA460.  The Probation Office also applied a six-point enhancement because Mr. Milam assaulted an officer during the course of the offense.  JA460.  The Probation Office thus calculated an adjusted offense level of 27 on the assault offense.  JA460.

The Probation Office concluded that the combined adjusted offense level was 42.  JA460.  Applying a three-point reduction for acceptance of responsibility, the Probation Office calculated a total offense level of 39, and a Guidelines range of 360 months to life.  JA461.

19

The Probation Office suggested that the district court may wish to consider upward departures based on the alleged inadequacy of the criminal history category and based on dismissed and uncharged conduct.  JA463.

Mr. Milam asserted a variety of objections to the Guidelines calculation, including to the base offense level for the drug case, and to the firearm, threat of violence, maintaining a premises, and aggravating role enhancements.  JA465-469. Mr. Milam also objected to the Probation Office's calculation of the offense level for the assault offense.  JA466-467, JA469.  The government did not object to the presentence investigation report.  *See* JA465-470.

All three cases were set for a single sentencing hearing.  JA9, JA17, JA23. In his sentencing memorandum, Mr. Milam asked the court to vary downward from the Guidelines range based on the 18 U.S.C. § 3553(a) factors.  JA210-211.

On July 11, 2023, the parties appeared before the court for sentencing.  JA9, JA18, JA23; *see* JA472-516.  Mr. Milam, through counsel, withdrew his objections to the calculation of the offense level for the assault offense, and to the base offense level, the firearm enhancement, and the aggravating role enhancement pertaining to the drug case.  JA217.  In exchange for these concessions, the government agreed not to pursue the enhancements for maintaining a premises and for a credible threat of violence.  *See* JA217-218.  Although the government had previously stipulated that Mr. Milam should receive a three-point reduction for

20

acceptance of responsibility, JA330, and the government did not object to the Probation Office's application of that reduction in the presentence investigation report, *see* JA465-470, the government's counsel told the court that acceptance of responsibility "would be an issue." JA218. Without that reduction, the parties agreed that the total offense level would be 38, the criminal history category would be VI, and the Guidelines range would be 360 months to life. JA218-219.

The government argued that no reduction for acceptance of responsibility should apply, because Mr. Milam breached the plea agreement by assaulting correctional officers and by engaging in drug activity while incarcerated. JA221-223. The court acknowledged that Mr. Milam was seeking a two-level reduction for acceptance of responsibility, "[b]ecause you know the government is not going to move for that third point." JA223. Mr. Milam's counsel did not offer any other evidence for the court to consider as to acceptance of responsibility. JA223. The court observed that "there is no way that somebody waiting to be sentenced, who then starts dealing drugs in the jail while he awaits the reckoning of today would ever be thought to have accepted responsibility under the guideline format." JA223. Therefore, the court concluded that the total offense level was 38 and the criminal history category was VI, resulting in a Guidelines range of 360 months to life. JA223-224.



Turning to the 18 U.S.C. § 3553(a) factors, Mr. Milam's counsel argued for a sentence of twenty years, noting Mr. Milam's family support, age, and strong history of employment.  JA225-226.  The government's counsel argued that a

sentence of 480 months was appropriate, citing Mr. Milam's lack of respect for the

law and his involvement with the Aryan Kings.  JA226-238.



The court then continued the sentencing hearing.

JA238-239.

The court resumed the sentencing hearing on July 26, 2023.  JA9, JA18,

JA23; *see* JA520-578.



Again turning to the § 3553(a) factors, the government's counsel detailed

Mr. Milam's involvement in the Aryan Kings, his drug trafficking activity, his

conduct while detained, including the assault on correctional officers, and

Mr. Milam's criminal record.  JA241-253.  The government's counsel asked the

court to impose a sentence between 360 and 380 months.  JA254.  Mr. Milam's

counsel requested a sentence "in the 20-year category," JA256, highlighting

Mr. Milam's family support and his willingness and ability to change, JA254-257.

In his allocution, Mr. Milam apologized to the court and called his decisions "wrong, irresponsible, and extremely selfish." JA257. Mr. Milam told the court that he was not the "drug-dealing gang leader" the government made him out to be. JA257. He said that he had become addicted to drugs at a young age, that he had worked most of his life as a commercial fisherman, and that he had been an active father to his children. JA258. Mr. Milam assured the court that he would "never do anything to jeopardize [his family] being together again." JA258. Mr. Milam specifically apologized "to the officer at the Pamlico County Jail" he had injured. JA259. Mr. Milam said, "That was unacceptable and out of character for me. I am ashamed and very remorseful for my actions that day." JA259. Mr. Milam described his efforts at rehabilitation since the assault, including that he had gotten himself mental health treatment, separated himself from negative influences, and found a "higher power." JA259. He said he wanted to use his remaining time in custody to overcome his addiction and improve his mental health. JA259. Mr. Milam reiterated, "I take full responsibility for my actions." JA260. The court asked Mr. Milam about his association with the Aryan Kings. JA260. Mr. Milam responded that he had "separated [himself] all the way from them as far as [he] could." JA260. He noted that some members of the Aryan Kings were his relatives and said he did not contact them anymore. JA260. Mr. Milam told the

25

court that he wanted to have the swastika tattoo removed from his chest and that he was not a racist, despite what his past suggested.  JA261.

The court announced a total sentence of 300 months, characterizing it as a "generous sentence."  JA263.  As to the firearm case, the court sentenced Mr. Milam to a 120-month term of imprisonment and a three-year term of supervised release.  JA282-283, JA265-266.  As to the drug case, on the conspiracy charge, the court sentenced Mr. Milam to a 300-month term of imprisonment and a five-year term of supervised release; on the possession with intent to distribute charge, the court sentenced Mr. Milam to a 240-month term of imprisonment and a three-year term of supervised release.  JA282-283, JA265-266.  As to the assault case, the court sentenced Mr. Milam to a 240-month term of imprisonment and a three-year term of supervised release.  JA282-283, JA266.  The court ordered all sentences to run concurrently, producing a 300-month total term of imprisonment, and a five-year total term of supervised release.  JA282-283.

In all three cases, the district court entered judgment on July 31, 2023.  JA9, JA18, JA23; *see* JA280-287.

*Notices of appeal*

Mr. Milam timely filed notices of appeal in all three cases on August 14, 2023.  JA9, JA18, JA23; *see* JA288.  This Court consolidated all three cases for

appeal.  Order, *United States v. Milam*, No. 23-4527(L) (4th Cir. Aug. 16, 2023)

(Dkt. No. 4).

## SUMMARY OF ARGUMENT

David Craig Milam pleaded guilty to firearm and drug charges in two cases

before learning that the Government had never produced to his counsel a complete

copy of the search warrant affidavit that enabled police to search his home.  When

new counsel identified the deficiency in the Government's discovery and obtained

the complete search warrant affidavit, Mr. Milam sought to withdraw his guilty

pleas, arguing that his guilty pleas were not knowing and voluntary given that he

relied on incomplete discovery, and that he had not had the close assistance of

competent counsel at the time of his pleas.  Mr. Milam contends that the district

court erred by denying Mr. Milam's motion and allowing his guilty pleas to stand.

Mr. Milam asks this Court to reverse the district court's ruling and allow

Mr. Milam to withdraw his guilty pleas in the firearm and drug cases.

Mr. Milam pleaded guilty in a third case, where he was charged with

assaulting a correctional officer, after the district court erroneously denied his

motion to withdraw his guilty pleas to the firearm and drug charges.  Sentencing

errors at a combined sentencing hearing on all three cases require remand for

resentencing.

27

The district court committed procedural error by allowing the Government to argue that Mr. Milam should not receive a reduction for acceptance of responsibility, when the Government had not objected to the Probation Office's application of a reduction in the presentence investigation report. The district court further erred by ruling that Mr. Milam was ineligible to receive credit for acceptance of responsibility. Although the Government offered evidence that Mr. Milam engaged in criminal conduct after pleading guilty, including being involved in trafficking drugs in the detention center, other evidence established that he did accept responsibility for his conduct. ██████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████ These procedural errors warrant resentencing.

Mr. Milam also challenges the district court's 300-month sentence as substantively unreasonable, and seeks remand for resentencing on that basis.

**ARGUMENT**

## I. THE DISTRICT COURT ERRED BY DENYING MR. MILAM'S MOTION TO WITHDRAW HIS GUILTY PLEAS.

*Standard of Review*

This Court reviews an order denying a defendant's motion to withdraw a guilty plea "to determine whether the district court abused its discretion in determining that [the defendant] had not shown a 'fair and just reason' for being

28

allowed to withdraw his plea[.]" *United States v. Craig*, 985 F.2d 175, 178 (4th Cir. 1993) (per curiam). "A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *United States v. Thompson-Riviere*, 561 F.3d 345, 348 (4th Cir. 2009) (quotation omitted).

*Discussion*

A defendant may withdraw a guilty plea after the district court accepts the plea, but before the court imposes a sentence, if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); *see Moore*, 931 F.2d at 248. A properly conducted plea colloquy, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, raises a presumption that the plea is final and binding. *See United States v. Bowman*, 348 F.3d 408, 414 (4th Cir. 2003). The defendant bears the burden of establishing a fair and just reason for withdrawal. *See Thompson-Riviere*, 561 F.3d at 348.

As shown below, this Court can reach the merits of Mr. Milam's appeal of the denial of his motion to withdraw his guilty pleas in both the firearm and drug cases. Mr. Milam did not enter a plea agreement in the firearm case; although he did enter a plea agreement in the drug case, his arguments are not barred by the

29

appeal waiver in that plea agreement.  Mr. Milam respectfully contends that the

district court abused its discretion by denying the motion.

A.    The Appeal Waiver in Mr. Milam's Plea Agreement in the Drug Case
Does Not Bar His Appeal of the District Court's Denial of the Motion
to Withdraw His Guilty Pleas.

"[A] waiver of appeal rights in a plea agreement will not bar appellate

review of the denial of a motion to withdraw the underlying guilty plea when the

plea-withdrawal motion incorporates a colorable claim that the plea agreement

itself—and hence the waiver of appeal rights that it contains—is tainted by

constitutional error," including "lack of constitutionally effective assistance of

counsel."  *United States v. Attar*, 38 F.3d 727, 733 n.2 (4th Cir. 1994).  In his plea

agreement in the drug case, Mr. Milam waived his right to appeal his conviction on

any ground, except for grounds of ineffective assistance of counsel or prosecutorial

misconduct not known to him at the time of his plea.  JA325-326.  Mr. Milam's

motion to withdraw the guilty pleas attacked the constitutionality of the pleas—

Mr. Milam argued that his pleas were not knowing and voluntary because of a

*Brady* violation and that his counsel provided ineffective assistance.  JA103-109.

Therefore, the appeal waiver in Mr. Milam's plea agreement in the drug case does

not bar this Court's review of his appeal from the district court's order denying

Mr. Milam's motion to withdraw his guilty pleas in that case.  *See United States v.*

*Tran*, 623 F. App'x 52, 53 (4th Cir. 2015) (per curiam) (appeal waiver did not bar

30

review of denial of motion to withdraw plea "premised on [defendant's] claim that

his plea was not knowing"); *Craig*, 985 F.2d at 178 (appeal waiver did not bar

appellate review of denial of motion to withdraw plea where "plea-withdrawal

motion incorporates a claim that the waiver of appeal as well as the guilty plea

itself was tainted by his counsel's ineffectiveness"); *see also United States v.

Johnson*, 410 F.3d 137, 151 (4th Cir. 2005) ("Even if the court engages in a

complete plea colloquy, a waiver of the right to appeal may not be knowing and

voluntary if tainted by the advice of constitutionally ineffective trial counsel.").

> B. The District Court Abused Its Discretion by Denying Mr. Milam's Motion to Withdraw His Guilty Pleas.

This Court has provided a non-exclusive list of factors to guide the district

court's exercise of discretion on a motion to withdraw a guilty plea, including:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

*See Moore*, 931 F.2d at 248.[5]  "[A] district court typically should balance these

factors, along with any other pertinent information, to reach its decision."

---

[5] The *Moore* Court discussed a motion to withdraw a guilty plea under Rule 32 of the Federal Rules of Criminal Procedure.  *See Moore*, 931 F.2d at 248.  Rule 11(d) is now the applicable rule.  *See Bowman*, 348 F.3d at 411.

*Thompson-Riviere*, 561 F.3d at 348.  This Court has recognized that the first,

second, and fourth factors are "generally the most significant."  *United States v.*

*Kramer*, No. 21-4424, 2022 WL 2987964, at *1 (4th Cir. July 28, 2022) (per

curiam); *see also United States v. Sparks*, 67 F.3d 1145, 1154 (4th Cir. 1995)

("The factors that speak most straightforwardly to the question whether the movant

has a fair and just reason to upset settled systemic expectations by withdrawing her

plea are the first, second, and fourth.").  Here, Mr. Milam respectfully contends

that the first and fourth factors warranted allowing him to withdraw his guilty

pleas, and thus the district court abused its discretion by denying the motion.

> 1.    Mr. Milam credibly asserted that his plea was not knowing and
>        voluntary.

To be binding, a guilty plea must be entered "knowingly, and intelligently,

with sufficient awareness of the relevant circumstances and likely consequences."

*United States v. Moussaoui*, 591 F.3d 263, 278 (4th Cir. 2010) (quotation omitted).

The district court erred by finding that Mr. Milam had not credibly asserted that his

plea was not knowing and voluntary.  JA153 (memorandum and recommendation);

*see* JA179 (district court's order adopting memorandum and recommendation).

Mr. Milam offered credible evidence that he did not enter his pleas knowingly and

voluntarily, because he did not have complete discovery from the government at

the time of his pleas.  JA103-105; *see Moore*, 931 F.2d at 248.  Mr. Milam

contends that he could not plead guilty knowingly and intelligently when he and

his counsel did not have half of the search warrant affidavit that led to the search of his home and the discovery of drugs and firearms. *See* JA116-123, JA126-140.

"Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted." *Brady v. United States*, 397 U.S. 742, 756 (1970). As Mr. Milam argued to the district court, if he had known about the complete search warrant affidavit before pleading guilty, he might have appraised the government's evidence differently. JA108-109. Mr. Milam would have had the opportunity to argue that the search warrant affidavit did not support the finding of probable cause because the affidavit did not establish an adequate nexus between the suspected criminal activity and his home. *See Lalor*, 996 F.2d at 1583 ("In this and other circuits, residential searches have been upheld only where some information links the criminal activity to the defendant's residence.").

Mr. Milam did not have the chance to argue in a suppression motion that his case was similar to *United States v. Brown*, 828 F.3d 375, 382-83 (6th Cir. 2016), where the court concluded that there was insufficient information in a search warrant affidavit to support a search of a drug dealer's home, although the warrant contained information about suspected narcotics in the defendant's car. Here, as in *Brown*, the search warrant affidavit did not establish a nexus between the suspected

33

criminal activity and the location to be searched. *See id.* at 384. According to the affiant, Mr. Milam was a leader in the Aryan Kings, a gang allegedly involved in violence and drug distribution. JA135. Officers saw two men deliver some furniture to 1417 Old Folkstone Road, Mr. Milam's house; when officers stopped the men for a traffic violation, one of the men had a bag of suspected methamphetamine small enough to fit inside his pack of cigarettes. JA135. While that stop was in progress, officers stopped another vehicle that left the residence, driven by Mr. Milam with Robert Harmer as the passenger. JA136. According to the affiant, Mr. Harmer had a loaded syringe with suspected heroin in his pocket and Mr. Milam claimed ownership of a black bag containing cash and marijuana. JA136.

These facts are insufficient to support the affiant's assertion—and the magistrate's finding—that there was probable cause to search Mr. Milam's home. *See* JA136. The affidavit contains no information or observations about Mr. Milam purportedly storing drugs inside his home. *See* JA136. The affidavit suggests only that two people who had left Mr. Milam's home had user amounts of drugs on their persons, and that Mr. Milam claimed ownership of an unspecified amount of marijuana stored in his car. *See* JA136.[6]

---

[6] Other investigative materials provided by the government show that the bag contained two grams of marijuana. *See* JA173.

This Court recognized in *United States v. Grossman*, 400 F.3d 212, 218 (4th Cir. 2005), that under the circumstances of that case, it was reasonable to suspect that a known drug dealer stored drugs in homes to which he had keys. In *Grossman*, one search warrant affidavit included information from a reliable informant who identified the defendant as a drug dealer and an officer's observations of the defendant's suspicious behavior just outside the home's front door. *Id.* That search warrant led to evidence that the defendant had another apartment, where officers got a search warrant and found 4.5 kilograms of cocaine. *Id.* at 215-16. Based on that evidence, officers obtained a search warrant for a third residence where the defendant was known to stay. *Id.* at 216. The *Grossman* Court concluded that the warrants were supported by probable cause. *Id.* at 217.

*Grossman* is inapposite to the facts of this case, where the affiant offered no information to establish that Mr. Milam was a known drug dealer. *See* JA135-136. Unlike in *Grossman*, there was no reliable informant claiming that Mr. Milam was a drug dealer, and there was no series of searches turning up evidence that Mr. Milam was a drug dealer. *Compare Grossman*, 400 F.3d at 215-17 *with* JA135-136. The affiant's assertion that Mr. Milam claimed ownership of a bag of marijuana in his car was the only evidence implicating Mr. Milam in drug activity. *See* JA135-136. This assertion did not permit an inference that Mr. Milam was the kind of committed, long-time drug dealer who would necessarily keep drugs in his

35

home.  *See United States v. Roman*, 942 F.3d 43, 53 (1st Cir. 2019) (ruling that affidavit did not support nexus between drug activity and defendant's home, where there was nothing in affidavit about length of defendant's involvement in drug trafficking or drug activity at his residence).

Further, having the complete search warrant affidavit would have allowed Mr. Milam to consider and discuss with counsel whether there was a basis to challenge the affidavit under *Franks v. Delaware*, 438 U.S. 154 (1978).  JA175.  Mr. Milam argued in the district court that some of the statements in the complete search warrant affidavit were inconsistent with other evidence.  *See* JA175.  According to the district court, these inconsistencies are "beside the point that the totality of the circumstances support a determination of probable cause based upon the information in the affidavit."  JA184.  But Mr. Milam did not have the chance to investigate whether the inconsistencies reflected misrepresentations by law enforcement, and if so, whether those misrepresentations invalidated the search warrant.  *See* JA175; *see, e.g.*, *Roman*, 942 F.3d at 52 (concluding that search warrant affidavit, stripped of misrepresentations, did not establish nexus between defendant's drug activity and his home).

Mr. Milam thus offered credible evidence that his pleas were not knowing and voluntary, and the district court erred by finding to the contrary.  *See* JA165-167.

2.     Mr. Milam did not have the close assistance of competent counsel at the time of his pleas.

Ineffective assistance of counsel of "constitutional magnitude" can "constitute a 'fair and just reason' for allowing plea withdrawal." *Craig*, 985 F.2d at 179.  Counsel's performance must have fallen below an objective standard of reasonableness, and it must have prejudiced the defendant.  *See id.*; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984) (requiring showing of both deficient performance and prejudice to make out ineffective assistance claim). Mr. Milam was denied effective assistance of counsel when his counsel failed to obtain the complete search warrant affidavit and thus necessarily failed to discuss it with him.  Mr. Milam further contends that counsel's ineffective assistance was prejudicial.

Counsel's performance is evaluated under "prevailing professional norms." *Jones v. Murray*, 947 F.2d 1106, 1110 (4th Cir. 1991) (quotation omitted). Professional standards require that defense counsel "communicate and keep the client informed and advised of significant developments and potential options and outcomes." *Criminal Justice Standards for the Defense Function* § 4-1.3(d) (Am. Bar Ass'n 4th ed. 2017); *see also Jones*, 947 F.2d at 1110 (citing *Criminal Justice Standards* as setting professional norms).  Defense counsel "should keep the client reasonably and currently informed about developments" in the case, "including developments in pretrial investigation, discovery, disposition negotiations, and

37

preparing a defense." *Criminal Justice Standards for the Defense Function* § 4-3.9(a). When assisting a client in considering a guilty plea, defense counsel should discuss with the client and analyze multiple factors, including "the prosecution's evidence." *Id.* § 4-6.1(b). "It is counsel's duty to ensure that the defendant is sufficiently aware of the facts and circumstances surrounding the plea so that the defendant can make a reasonably informed decision." *Moussaoui*, 591 F.3d at 290.

As Mr. Milam showed the district court, his counsel could not have reviewed and informed him about the complete discovery because his counsel did not have the complete search warrant affidavit that allowed officers to search Mr. Milam's home. *See* JA106-107, JA168. Although Ms. Godwin testified that she discussed the search warrant and the possibility of a motion to suppress with Mr. Milam, Mr. Milam contends that this statement cannot be true because Ms. Godwin did not have the complete search warrant affidavit. *See* JA168. If she had reviewed the affidavit, she would have noticed that it was incomplete. *See* JA106. Instead, she failed to review it with Mr. Milam and thus failed to give him adequate advice on a possible motion to suppress. JA169-174.

Contrary to the magistrate judge's finding, JA161, Mr. Milam's statements at his arraignments that he was satisfied with his counsel's services, JA43, JA77, do not show that those services were constitutionally sufficient. Mr. Milam, as a non-lawyer, was not in a position to tell the court whether his counsel's advice was

constitutionally effective. *See, e.g.*, *United States v. Lough*, 203 F. Supp. 3d 747, 752-54 (N.D. W. Va. 2016) (finding that defendant did not have close assistance of competent counsel despite defendant's statements at arraignment that he was satisfied with counsel's services).

Mr. Milam respectfully contends that his counsel at the time of arraignment rendered constitutionally deficient performance when counsel failed to review and discuss the search warrant with him before he entered his pleas. *See Criminal Justice Standards for the Defense Function* §§ 4-1.3(d), 4-3.9(a), 4-6.1(b). Mr. Milam established by moving to withdraw his guilty plea that he would not have pleaded guilty and would have insisted on going to trial if he had known about the complete search warrant affidavit. *See* JA95-102. Therefore, Mr. Milam was prejudiced by his counsel's ineffective assistance. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (to show *Strickland* prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").

> 3.     The other relevant *Moore* factors did not warrant denying
>        Mr. Milam's motion to withdraw his pleas.

The remainder of the *Moore* factors are insufficient to overcome Mr. Milam's showing that his pleas were not knowing and voluntary, and that he did not have the close assistance of competent counsel.

On the second factor, Mr. Milam concedes that he did not assert legal innocence; however, this factor is not necessarily required for a court to find a fair and just reason for withdrawal of a guilty plea. *See, e.g.*, *United States v. Yansane*, 370 F. Supp. 3d 580, 590, 592 (D. Md. 2019) (granting motion to withdraw guilty plea despite finding that defendant had not credibly asserted legal innocence).

On the third factor, the district court correctly determined that Mr. Milam moved forward with his motion to withdraw his guilty pleas "reasonably promptly" after learning of the basis for the motion. JA161-162.

"Because withdrawal of a guilty plea almost invariably prejudices the government to some extent and wastes judicial resources, the fifth and sixth factors can weigh in the defendant's favor so long as she shows that the magnitudes of the prejudice and inconvenience are small; the defendant need not show that the effects will be nonexistent." *Sparks*, 67 F.3d at 1154 n.5. A court will not find prejudice because the government will incur "costs that would inevitably attend the trial of a particular case even in the absence of a withdrawn guilty plea." *United States v. Hankins*, No. 2:09-cr-00222, 2010 WL 4642004, at *5 (S.D. W. Va. Nov. 8, 2010) (quotation omitted). The government "must identify some costs specifically resulting from the entry and subsequent withdrawal of the plea." *Id.*

The government made only a conclusory assertion of prejudice in opposition to Mr. Milam's motion to withdraw, arguing that it had relied on Mr. Milam's

guilty to plea and "allowed the sentencings of other cooperators who might be needed to testify against [Mr. Milam] at trial to go forward." JA343. The district court, and not the government, decided when sentencing hearings would be held. The fact that other witnesses had been sentenced did not make them unavailable to the government; rather, based on the government's description of those individuals as "cooperators," JA343, it appears that the witnesses likely were bound by their plea agreements to be available to testify if called. Therefore, any prejudice to the government resulting from the withdrawal of Mr. Milam's plea would have been slight. *See, e.g.*, *United States v. Artabane*, 868 F. Supp. 76, 79 (M.D. Pa. 1994) (mere assertion of prejudice to government was insufficient to warrant denial of motion to withdraw plea where witnesses were local and readily available for trial); *see also Sparks*, 67 F.3d at 1154, n.5 (defendant need not disprove all prejudice to government).

The sixth factor also can weigh in favor of the defendant even if there will be some inconvenience to the court or waste of judicial resources. *See Sparks*, 67 F.3d at 1154 n.5. Allowing Mr. Milam to withdraw his pleas would have required some additional expenditure of judicial resources in the form of further proceedings and trial. However, the cost of additional proceedings, including trial, was outweighed by the interest in allowing Mr. Milam to hold the government to its burden of proof at trial. *See Hankins*, 2010 WL 4642004, at *6 (allowing

41

withdrawal of plea where defendant had legitimate interest in testing possibility of acquittal by holding government to its burden of proof).  Therefore, concern for inconvenience to the court and judicial economy did not warrant denial of Mr. Milam's motion.

*      *      *

For these reasons, Mr. Milam respectfully contends that the district court erred by denying his motion to withdraw his guilty pleas in the firearm and drug cases.  Mr. Milam requests that the Court reverse the district court's denial of the motion to withdraw and remand for further proceedings in the firearm and drug cases.  In addition, because the court held a single sentencing hearing and considered Mr. Milam's convictions on all charges together, Mr. Milam contends that he is entitled to reversal of the judgment in the assault case, and remand for resentencing upon the resolution of the firearm and drug cases.  *See, e.g.*, *United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017) ("The sentencing package doctrine accounts for the holistic approach that a district court should employ when sentencing a defendant convicted of multiple offenses.").

II.    THE DISTRICT COURT COMMITTED PROCEDURAL ERROR AT
SENTENCING BY DECLINING TO APPLY A REDUCTION IN THE
OFFENSE LEVEL FOR MR. MILAM'S ACCEPTANCE OF
RESPONSIBILITY.

*Standard of Review*

In reviewing a sentence, this Court "must first ensure that the district court

committed no significant procedural error, such as failing to calculate (or

improperly calculating) the Guidelines range . . . ." *Gall v. United States*, 552 U.S.

38, 51 (2007).

This Court reviews the district court's consideration of the government's

untimely objection to a reduction for acceptance of responsibility for plain error.

*See United States v. Byrd*, 208 F. App'x 206, 209 (4th Cir. 2006) (per curiam); *see*

*also United States v. Olano*, 507 U.S. 725, 732 (1993) (plain error standard).

As to the merits of the decision to deny the reduction, this Court reviews "a

district court's decision concerning an acceptance-of-responsibility adjustment for

clear error." *United States v. Dugger*, 485 F.3d 236, 239 (4th Cir. 2007).  "A

finding is 'clearly erroneous' when although there is evidence to support it, the

reviewing court on the entire evidence is left with the definite and firm conviction

that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S.

364, 395 (1948).

*Discussion*

A defendant who "clearly demonstrates acceptance of responsibility for his offense" will receive a two-level decrease in the offense level. U.S.S.G. § 3E1.1(a). In addition, if the defendant qualifies for a decrease under § 3E1.1(a) and the offense level is 16 or greater, the defendant is entitled to an additional one-level reduction "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." *Id.* § 3E1.1(b).

"A guilty plea does not automatically entitle a defendant to a reduction for acceptance of responsibility." *United States v. Kise*, 369 F.3d 766, 771 (4th Cir. 2004). "Rather, the district court is to evaluate the defendant's acts and statements to determine whether the defendant has accepted responsibility for his or her criminal conduct." *Id.* "Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under § 1B1.3 . . . , will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a)." U.S.S.G. § 3E1.1, n.3. "However, this evidence may be outweighed by conduct of

44

the defendant that is inconsistent with such acceptance of responsibility." *Id.*

Mr. Milam respectfully contends that the totality of the evidence at his sentencing

hearing demonstrated that he accepted responsibility, and the district court clearly

erred by finding otherwise.

    A.    The District Court Erred by Considering the Government's Argument
            That Mr. Milam Should Not Receive a Reduction for Acceptance of
            Responsibility Because the Government Did Not Object to That
            Reduction in the Presentence Investigation Report.

The Federal Rules of Criminal Procedure provide that "[w]ithin 14 days

after receiving the presentence report, the parties must state in writing any

objections, including objections to material information, sentencing guideline

ranges, and policy statements contained in or omitted from the report."  Fed. R.

Crim. P. 32(f).  This rule applies equally to objections by the defendant and the

government.  *See United States v. Dix*, 64 F.4th 230, 235 (4th Cir. 2023)

(discussing government's failure to timely object to presentence investigation

report).

The parties stipulated in the plea agreement in the drug case that Mr. Milam

should receive a reduction for acceptance of responsibility, "provided that if

Defendant's conduct prior to sentencing changes the circumstances with respect to

any such factors," the government would no longer be bound to its position.

JA330.  When the Probation Office issued the presentence investigation report, it

applied the stipulated three-point reduction, although it separately noted that the

Probation Office did not recommend a reduction for acceptance of responsibility.

JA461. The government did not object to the application of the three-point

reduction for acceptance of responsibility. *See* JA465-470 (addendum containing

objections). There was no reason that the government could not have objected to

the presentence investigation report—the government argued that it should be

relieved from the acceptance of responsibility stipulation based on conduct that

occurred in 2021 and 2022. JA221-222; *see* JA445-448. The draft of the final

presentence investigation report was filed on June 13, 2023, long after the

government became aware of the facts supporting its position that Mr. Milam

should not receive a reduction. JA8; *see, e.g.*, JA446 (discussing controlled

purchase from Mr. Milam made on July 20, 2021).

The district court committed a plain procedural error by allowing the

government to argue at sentencing that Mr. Milam should not receive acceptance

of responsibility credit when the government failed to preserve that objection to the

presentence investigation report. *See Byrd*, 208 F. App'x at 210 (concluding that

district court committed plain error by considering government's objection to

safety valve reduction when government did not object to presentence

investigation report, but declining to reverse because error did not affect

substantial rights); *see also United States v. Winbush*, 922 F.3d 227, 230-31 (4th

Cir. 2019) (concluding that district court erred by allowing government to change

46

position on whether prior offense was a career offender predicate when
government did not object to Probation Office's failure to designate that offense as
a predicate in presentence investigation report).  The error affected Mr. Milam's
substantial rights because the court agreed with the government's belated assertion
and denied Mr. Milam credit for acceptance of responsibility.  *See* JA579.
Mr. Milam respectfully asks this Court to notice the error and require the district
court to correct it on remand.  *See infra* section II.D.

B.   ██████████████████████████████████████
████████████████████████████████████████████

Mr. Milam acknowledges that a court may consider evidence that the
defendant engaged in continued criminal conduct as a basis to deny credit for
acceptance of responsibility.  *E.g.*, *United States v. Cruz-Polanco*, 797 F. App'x
92, 94 (4th Cir. 2019) (per curiam) (affirming district court's denial of § 3E1.1
reduction where defendant "continued to engage in criminal conduct by possessing
and distributing a controlled substance and possessing a weapon while an inmate
of a jail"); *Dugger*, 485 F.3d at 240-41 (finding no clear error in denial of § 3E1.1
credit where defendant continued to sell drugs while incarcerated); *United States v.
Parsons*, 57 F. App'x 565, 566-67 (4th Cir. 2003) (per curiam) (finding no clear
error in denial of § 3E1.1 credit where defendant engaged in criminal conduct after
his arrest).  However, the question of acceptance is a factual one, and the absence

47

of clear error in other cases does not control the unique factual scenario of

Mr. Milam's case. *See generally United States v. Miller*, 77 F.3d 71, 74 (4th Cir.

1996) (recognizing factual nature of acceptance of responsibility).

The district court erred by failing to consider the complete record of

Mr. Milam's post-arrest conduct when it decided that he could not receive a

reduction for acceptance of responsibility. Instead, the district court made its

determination early in the first part of the sentencing hearing, JA223, ████

████████████████████████████████████████████████

████████████████████████████████████████  *See*

JA527-530.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████  JA521 (noting that all sentencing

issues had been decided at initial hearing except for length of sentence). The court

did not consider whether Mr. Milam's conduct, in its totality, now showed that he

had clearly accepted responsibility for his crimes. *See* JA521-570. Mr. Milam

contends that all the evidence, taken together, showed that he did accept

responsibility—he promptly pleaded guilty, admitted his crimes in a post-arrest

interview, ████████████████████████████████████████

████████████████████████████████████████████

48

███████████████████████████████████████  JA527-530.

Mr. Milam respectfully contends that the district court committed clear error by

finding otherwise.  *See* JA579.

> C.    In the Alternative, the District Court Failed to Recognize That It Had
>        Discretion to Award a Reduction for Acceptance of Responsibility in
>        These Circumstances.

In the alternative, Mr. Milam contends that the district court did not appear

to recognize its authority to award a reduction for acceptance of responsibility,

despite Mr. Milam's post-arrest conduct.[7]  The district court said that "there is no

way" that a defendant in Mr. Milam's position "would ever be thought to have

accepted responsibility under the guideline format."  JA223.  To the contrary, the

district court had the authority to find that Mr. Milam accepted responsibility even

if there was some evidence that undermined his acceptance of responsibility.  *See*

U.S.S.G. § 3E1.1, n.1 (recognizing termination of criminal conduct as one among

many considerations informing whether defendant accepted responsibility); *see*

*also, e.g.*, *United States v. Restrepo*, 936 F.2d 661, 669 (2d Cir. 1991) (concluding

that district court did not err by finding that defendant accepted responsibility

despite also having obstructed justice after arrest).

---

[7] To the extent that this Court concludes that the district court did not recognize its
authority to consider acceptance of responsibility in this circumstance, the Court
reviews the district court's conclusion *de novo*.  *See United States v. Hargrove*,
478 F.3d 195, 198 (4th Cir. 2007).

D.     The District Court's Errors Denied Mr. Milam the Opportunity to
       Establish a Lower Guidelines Range, and Thus Warrant Reversal.

The district court's procedural errors at sentencing are reversible because

they prevented Mr. Milam from being able to show that his Guidelines range was

lower than what the district court calculated.  If the district court had considered all

the evidence, it could have found that Mr. Milam did accept responsibility and that

a two-level reduction should apply pursuant to § 3E1.1(a).  *See supra* section II.B,

C.  And, if the district court had held the Government to the position it took by

failing to object to the presentence investigation report, the district court could

have found the additional one-level reduction appropriate pursuant to § 3E1.1(b).

*See supra* section II.A.  Mr. Milam could have faced a lower Guidelines range—

either 292 to 365 months or 324 to 405 months.  *See* U.S.S.G. ch. 5, Sentencing

Table (ranges for offense level 35/category VI and offense level 36/category VI).

"[I]n most cases the Guidelines range will affect the sentence."  *Molina-*

*Martinez v. United States*, 578 U.S. 189, 204 (2016).  This case is no different.

Because the district court's errors prevented Mr. Milam from establishing a lesser

Guidelines range, which may have translated to a lesser sentence, those errors

affected Mr. Milam's substantial rights.  *See id.*  Mr. Milam contends that the

district court's errors also seriously affected the fairness and integrity of the

proceedings below, and he asks the Court to exercise its discretion to correct these

errors.  *See generally Olano*, 507 U.S. at 736.

50

III.    THE DISTRICT COURT'S 300-MONTH TOTAL SENTENCE IS
        SUBSTANTIVELY UNREASONABLE.

*Standard of Review*

        "Assuming that the district court's sentencing decision is procedurally

sound, the appellate court should then consider the substantive reasonableness of

the sentence imposed under an abuse-of-discretion standard." *Gall*, 552 U.S. at 51.

When reviewing a sentence's substantive reasonableness, the Court takes into

account the totality of the circumstances. *Id.* Where, as here, "the district court

imposes a below-guidelines sentence," this Court "may presume that the chosen

sentence is substantively reasonable." *United States v. Sueiro*, 59 F.4th 132, 143

(4th Cir. 2023) (quotation and brackets omitted). A defendant can rebut that

presumption "by demonstrating that the sentence is unreasonable when measured

against the § 3553(a) factors." *United States v. Montes-Pineda*, 445 F.3d 375, 379

(4th Cir. 2006) (citation omitted); *see United States v. Louthian*, 756 F.3d 295, 306

(4th Cir. 2014) (applying *Montes-Pineda* to below-Guidelines sentence).

*Discussion*

        At sentencing, the district court will consider "the nature and circumstances

of the offense and the history and characteristics of the defendant." *See* 18 U.S.C.

§ 3553(a)(1). Based on these factors and other considerations, the sentencing court

"shall impose a sentence sufficient, but not greater than necessary," to serve the

purposes of sentencing:

51

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id.* § 3553(a), (a)(2).  Although this Court will give deference to a district court's application of the § 3553(a) factors, "[a] review for substantive reasonableness" demands that the Court "proceed beyond a formalistic review of whether the district court recited and reviewed the § 3553(a) factors and ensure that the sentence caters to the individual circumstances of a defendant, yet retains a semblance of consistency with similarly situated defendants." *United States v. Howard*, 773 F.3d 519, 531 (4th Cir. 2014).  When measured against the purposes of sentencing in § 3553(a)(2), and Mr. Milam's individual circumstances, the district court's 300-month sentence is substantively unreasonable because it is "greater than necessary" to comply with the purposes of sentencing. *See* 18 U.S.C. § 3553(a); *see also United States v. Shortt*, 485 F.3d 243, 248 (4th Cir. 2007) ("A sentence that does not serve the announced purposes of § 3553(a)(2) is unreasonable.  Likewise, a sentence that is greater than necessary to serve those purposes is unreasonable." (citations omitted)).

Mr. Milam does not dispute that the nature and circumstances of the offenses of conviction were serious.  *See* 18 U.S.C. § 3553(a)(1).  He made clear at sentencing that he understood the wrongfulness of his conduct, but he also

52

explained that his involvement in the offenses lasted for a relatively short period of time, and that he and others who were part of the conspiracy generally supported each other's drug habits.  JA257.  Mr. Milam respectfully contends that his conduct was less serious than the district court's 300-month sentence reflects.

Mr. Milam's history and characteristics, *see* 18 U.S.C. § 3553(a)(1), support a lesser sentence.  Mr. Milam's criminal history score is concededly high, but Mr. Milam has other redeeming qualities.  He has an excellent work history in the commercial fishing industry, where he has worked hard from an early age to provide for himself and his family.  JA458.  He is close to his family and he maintains relationships with his children.  JA495, 496.  He is recognized as a loving father despite his flaws.  *See* JA225.  His addiction to drugs started during his childhood and, although it does not excuse his conduct, it provides some explanation for his repeated problems with the law.  *See* JA457.

A 300-month sentence is greater than necessary "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment" under the circumstances of this case.  *See* 18 U.S.C. § 3553(a)(2)(A).  Mr. Milam's sentence exceeds sentences regularly imposed for much more serious conduct.  For example, Mr. Milam's sentence is longer than the median sentence imposed for murder convictions in federal court in fiscal year 2022.  *See* U.S. Sent'g Comm'n, *2022 Annual Report and Sourcebook of Federal Sentencing Statistics* 64 (Table

53

15) (median sentence of 240 months for murder).[8]  The sentence is likewise

significantly longer than the median sentences for sexual abuse and kidnapping.

*See id.*  In light of the sentences imposed for other, more serious offenses, a 300-

month sentence is not necessary to punish Mr. Milam for his crimes.  *See id.*

Mr. Milam's sentence is also greater than necessary "to afford adequate

deterrence to criminal conduct."  *See* 18 U.S.C. § 3553(a)(2)(B).  A 300-month

prison sentence is not necessary to deter others who might engage in conduct

similar to Mr. Milam's conduct where, as shown above, shorter sentences are

regularly found sufficient to deter others who might engage in murder, sexual

abuse, and kidnapping.  *See supra* pp. 53-54.  Prior to this case, Mr. Milam served

a variety of short sentences, many only a matter of days, with the longest sentence

being eight to nineteen months in state custody.  JA448-455.  Although these

sentences show a pattern of recidivism, the district court's sentence is fifteen times

longer than the longest term of imprisonment Mr. Milam ever faced.  *See* JA448-

455.  Even a sentence well below 300 months would thus have a sufficient

deterrent impact on someone like Mr. Milam, who has never before served such a

lengthy sentence.  *See United States v. Baker*, 445 F.3d 987, 992 (7th Cir. 2006)

(noting fact "that a prison term would mean more to [this defendant] than to a

---

[8] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2022/2022-Annual-Report-and-Sourcebook.pdf.

defendant who previously had been imprisoned" was relevant to § 3553(a) analysis).

A 300-month sentence was not necessary "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(2)(C). Mr. Milam is now forty years old, and his projected release date with good time credit is September 9, 2040. *See* JA225, JA439.[9] Mr. Milam's recidivism risk will decline with age, and he will pose less of a risk to the public, making it unnecessary to keep him in prison for 300 months. *See* U.S. Sent'g Comm'n, *Recidivism of Federal Offenders Released in 2010* at 25 (Sept. 2021) (finding declining recidivism rates with age).[10]

████████████████████████████████████████████████████

████████████████████████████████████████████  *See* JA521-JA523, JA527-530.

Finally, a 300-month sentence is greater than necessary to provide correctional treatment. *See* 18 U.S.C. § 3553(a)(2)(D). The court recommended that Mr. Milam participate in intensive substance abuse treatment and receive a comprehensive mental health assessment. JA263. These rehabilitative measures can be provided during any sentence of incarceration and supervised release, 18 U.S.C. § 3583(d), and can further reduce Mr. Milam's risk of recidivism. *See*

---

[9] David Craig Milam, Register No. 66249-056, BOP Inmate Locator, https://www.bop.gov/mobile/find_inmate/byname.jsp.

[10] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210930_Recidivism.pdf.

*generally* H.R. Rep. No. 103-320, 1993 WL 537335 (finding, in connection with legislation establishing residential substance abuse treatment program in federal prisons, that "[w]ith appropriate treatment, the recidivism rate of substance abusers can be dramatically reduced").

*        *        *

The individual circumstances of Mr. Milam's case demonstrate that the district court's 300-month total prison sentence is "greater than necessary" to comply with the purposes of sentencing. *See* 18 U.S.C. § 3553(a). Therefore, when measured against the § 3553(a) factors, the sentence is substantively unreasonable. *See Montes-Pineda*, 445 F.3d at 379.

## CONCLUSION

For the reasons stated above, Appellant David Craig Milam respectfully requests that the Court reverse the district court's denial of his motion to withdraw his guilty pleas in the firearm and drug cases; remand for further proceedings in those cases following the withdrawal of his pleas; vacate his sentences in all three cases; and remand for a new sentencing hearing as to all three cases.

56

This the 11th day of December, 2023.

/s/ Kelly Margolis Dagger
Kelly Margolis Dagger
N.C. State Bar No. 44329
Paul K. Sun, Jr.
N.C. State Bar No. 16847
ELLIS & WINTERS LLP
Post Office Box 33550
Raleigh, North Carolina  27636
Telephone:  (919) 865-7000
Facsimile:  (919) 865-7010
kelly.dagger@elliswinters.com
paul.sun@elliswinters.com

*Counsel for Appellant David Craig Milam*

## <u>CERTIFICATE OF COMPLIANCE</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

A.    This brief complies with the word limitation requirements of Fed. R. App. P. 32(a)(7)(B)(i) because it contains no more than 13,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

B.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

  this brief has been prepared in a proportionally spaced typeface using 14 Point Times New Roman in Microsoft Word.

This the 11th day of December, 2023.

  <u>/s/ Kelly Margolis Dagger</u>
  Kelly Margolis Dagger

  *Counsel for Appellant David Craig Milam*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on December 11, 2023, I filed the foregoing Appellant's Opening Brief with the Clerk of Court using the CM/ECF system, which will cause notice of such filing to be sent to counsel for the United States.

This the 11th day of December, 2023.

<u>/s/ Kelly Margolis Dagger</u>
Kelly Margolis Dagger

*Counsel for Appellant David Craig Milam*